Our next case is Smith v. City of Pelham, and we'll hear first from Mr. Guerrier. Guerrier. Guerrier. Thank you. Thank you, Your Honor. And may it please the Court, I am Charles Guerrier. I'm here on behalf of the appellant Jennifer Smith. I heard somebody say another Smith case this morning. This case involves a question about the propriety of Chief Palmer's decision to order an unauthorized forensic examination of the computer of a coworker who happened to be his administrative assistant. That unauthorized forensic examination produced evidence that was used to terminate Ms. Smith. The examination came within days or weeks of her filing an internal complaint of discrimination against Chief Palmer for denying her rights that were available to males in the city. A claim that I believe the evidence shows the city concluded she was correct, that she had been denied a right that male employees or other employees were allowed to use. Are you talking about when she asked to have some time off to work the second job? When she was denied the right to take time off because the chief disagreed with how she was going to use that time off. Okay. Which was to wear a second job. Right. I just wanted to make sure because my recollection is there may have been another complaint that she had previously filed against Palmer before he became the chief and I just wanted to make sure we're talking about the same thing. That earlier complaint I think was much earlier right before he was chief. So we're focusing only on the conduct that occurred after he became chief. And so what we have is a Title VII retaliation case where having filed an internal complaint of discrimination that is objectively reasonable and raises protected activity, that Chief Palmer then went out of his way to decide he was going to scrutinize Ms. Smith's conduct more closely. And then when that scrutiny did not produce any evidence that she had engaged in misconduct, he decided to have her computer forensically examined. And that not only was retaliatory because of her protected activity but because it was done without a search warrant and during that search he found backup copies of her personal cell phone which he then looked into the contents of. That was a violation of the Fourth Amendment and invasion of privacy. Would you agree that the city didn't necessarily need a search warrant? They may have needed a search warrant if they were doing a criminal investigation then obviously they would need a search warrant. But there could be some reasons why the city could search the computer without getting a search warrant if they were not doing a criminal investigation and they otherwise had a legitimate reason. Wouldn't you agree with that? And I would agree with that because you used the word city and not Chief Palmer. And I think there's a significant difference here. The city has an information technology specialist, an administrator of their program, that would have administrative rights that could look at the contents of the city. The city is just tied up in the computer, is that not the case? It's a city computer. It's the city's property and they have programs that I assume are run on those computers. There are programs run on those computers. Yeah, that are city programs, they're city designed, I'll put it that way. Yeah, they're city programs. But what is significantly different and why I think the district court got wrong on this is the city has a network of computers. Police officers, we're dealing with the police department. So police officers do not have their own computer. That when they come in, they go to an open computer, they log on to the network using that computer, enter information, and that information is all stored on the network. Nothing is stored on the individual computer. However, there are two computers within the department that are not on the network and are not accessible through the network. The chief of police's computer is confidential. No one can sign on to the network and access his computer and we understand that. We don't want employees looking at the chief's. The other person is his administrative assistant, Ms. Smith. Her computer was password protected. She was the only person who had the password to her computer. The chief did not have a password to her computer that the administrator for the city could access her computer if they wanted to. And so I guess I'm not asking you whether it was okay to access this computer in this case. I just, when you started, you said that a search warrant would be required for Palmer to access the computer. And my question for you is, aren't there some circumstances short of a search warrant, meaning not a criminal investigation, where the chief could access the computer legitimately? This may or may not be one of them. Well, we can talk a little more generally and then I'll get to the specifics. Certainly within the government context where an employee is using a government computer that a supervisor can come in and presumably will have access to that employee's password, would log on to that computer, perhaps looking for copies of files. I work for the government, the EEOC. My supervisors could come in any time they wanted and look at my computer because I'm out and they need to find these court orders, whatever is necessary. That can be done. And if the employer wishes to decide whether I'm engaging in abuse of my office through my computer, I think they have that right. Well, there might be a whole score of reasons why the city might want to get in the computer that you can't even dream up. Well, I think the case law is very clear. I think it's O'Connor and Ortega says, yeah, the government can do that in the ordinary circumstances. There may be special circumstances that limit that. This is one of those because when you look at the way the system was set up, the city did not give Chief Palmer administrative authority to access the computers on the network or do anything that an administrator can do. And he did not have or ask Ms. Smith for her password. So that at that point, there was an expectation of privacy on her part that no one other than the administrator, for whatever legitimate purposes they have, will access my computer. The interesting question here is, if indeed Chief Palmer thought there was a legitimate reason on the part of the city to access the computer, all he had to do is ask the IT office to do it. You don't have to get your buddy who works for the Homeland Security, organized crime, child pornography section of the FBI to come in at midnight, hack into her computer because they didn't have the password, and he wasn't an administrator, to use special software to hack into her computer and then start searching through it. There's a standing rule against using computers for private purposes. Is that the case? If that's so, that makes a policy. In a policy, you don't use a computer for your own, like it was your home computer. That's a very bad statement of the policy. Okay. So the policy puts everybody on notice that this is a government computer for government business, and in effect, if you use it improperly and put your own stuff on there, it's not going to be secret. Well, but does the fact that you can't expect it, you can't be assured that it won't be found out. I'm only assured that it will be looked at by the administrator, not that my coworker or my supervisor, who does not have access to my computer, will be allowed to hack into that computer using government authority without a search warrant. In other words, what you're saying is because her computer was kind of isolated, not accessible, that she could in effect use it contrary to the city policy and put stuff on there and it wouldn't be seen. No, I'm not saying that. It would only be seen by a couple of people. Right, because otherwise... But otherwise she has an expectation that she could use the government computer for her own purposes unless one or two people happen to have cause to go in there. That's your case. I think that's what Ortega and... I'm not making an argument for you. That's your case. What I'm saying is they set up a system where they make her computer not accessible to everybody else that they in effect invite her to put her own stuff on there contrary to city policy and she can expect it to be private. Well, they created an expectation, some expectation of privacy, and remember it doesn't have to be an absolute... No, I understand. Yeah, okay. And let me just on that, because I think you look at the exception for search warrants. The big concern is to make certain you've got a magistrate that's between the person who's curious and the judge and jury, and that's the real problem here. Palmer was the curious one. He makes the decision. He looks at the information. He fires her and he decides he's right, and that's why it's a problem. The title... And of course the same arguments apply to the state privacy claim. I don't know. We need to go into that. The Title VII claim I think becomes a little more nuanced again as Ms. Lansing discussed earlier. The change in the law has gotten so difficult with regard to causation, but I think even using McDonnell-Douglas, we can look at... There's no question she engaged in protected conduct. It's a prima facie case. There's causation. The conduct occurs very soon after she complains. They identify all these reasons in their brief as to why she was fired. Social media use. Chief testified, no, I didn't fire her for that. Abusive leave. The evidence is the investigation showed no abusive leave. They list all these reasons, none of which stand up, and for that reason we believe that the district court erred in granting summary judgment because at least there are material facts in dispute as to the Title VII claim and certainly as to the impropriety of the search. So we ask that this court reverse and remand this case for trial. Thank you, counsel. All right. We will hear from Mr. Owens. Excuse me. Sorry. One of us missed the handoff. Good morning. May it please the court. My name is Ben Owens and along with my co-counsel, Grace Graham, we are delighted for the opportunity to rise in support of the district court's decision affirming the city of Pelham's decision to terminate Jennifer Smith in this case. I gleaned from the first part of the argument that the court's focus on the privacy issues. If you have any questions of me in advance, since there are two issues, if you have any questions of me in advance, I would be glad to go in that direction. Thank you. I do. Let me start with the reasonable expectation of privacy. It does seem to me that under the more recent Supreme Court case law and some of the case law that's coming out of some of the other circuits, that when we ask about whether there was a reasonable expectation of privacy, we don't look solely to the policy that the city has. That is a consideration. It's certainly an important factor, but it's not the only factor. We also have to look at things like, for example, whether any other searches had previously been done on these kinds of computers, how frequently they were done. Were there expectations of privacy concerning the specific circumstances that occurred there? So, for example, in this case, we have a situation where Palmer says he had never requested such a search before, and the person who he had instructed to perform the search had never conducted a search like this before at the request of anyone in the city. And so we don't have the kind of situation where these things are going on frequently or even really at all. So that is sort of a consideration here. We also have the situation where she had a phone that was paid for by the city for at least some part of the time, and that was backed up on the city computer, according to her, because she was authorized to do that. And some of the information that came onto the computer was from this phone. I mean, the Facebook stuff, or at least some of the pictures, I guess, were certainly from the phone. And then, of course, we have the fact that it was password protected, and the way in which the computer was accessed here, going in at midnight, using special software to get around the password, et cetera. All of these things seem to me to lead to the conclusion that there may have been a reasonable expectation of privacy, certainly with respect to what was on the cell phone. And for that, I also think about Riley and Carpenter. And second, with respect to at least the carve-out of emails that were dumped or discarded, trashed by Ms. Smith, that she would have had a reasonable expectation of privacy under what seems to be the current case law, and maybe even the whole thing. And I wonder if you want to address that first. I'd be delighted to. I'm still trying to unpack it, because I know there's... I'm sorry, it's a long question, but I want to make sure... I have a minute for it, so I'm trying to figure out... We'll give you a little extra time. I just... I was trying to figure out, in unpacking that, what is most significant on your mind. The Riley and California case, I think, certainly sets the bar to a certain extent. The district court cited the U.S. v. Riley. You may be talking about... I thought you were talking about Riley v. California. Yes, the U.S. v. Riley case... I'm sorry. I should have been more specific. ...sets the standard in this circuit and comes as close to dealing with this issue, probably, as any case we have. The way the city looks at it is this. Number one, Chief Palmer was the appointed authority. She worked directly for him. There was no other administrative assistant. So, with respect to the expectation of privacy, her computer was his computer, because she's doing his work. And so, he's got, under the computer use policy, the right to go in and monitor that use at any time, as the department head. He doesn't have to go to the IT department to do that. They are not co-equal. The IT department has no appointing authority, for example, over him. If he thinks it's necessary to do an internal investigation, he can do that internally. Detective McGill was the specialist in this area. And because their computers contained confidential information, there were reasons Chief Palmer selected him to do the work, because he is a specialist and knows how to get at the information that he was looking for, rather than using the IT department. So, in the context of expectation of privacy, it's the city's computer. They have the computer policies. We can monitor use at any time. There was also the department policy that said that you cannot store personal information on your computers. She did that. He has, as a result of that, she loses that expectation of privacy. So, and I appreciate that. And that is definitely an important factor. There's no question about that. That's an important factor. But I don't think that's the only factor under the case law. And so, I guess I want to ask you, if you could, to talk about the other factors and why they don't change the analysis here and require a conclusion that there's a reasonable expectation of privacy. Well, it's the city's position that because of the computer use policy and because of the police department policy prohibiting personal items being stored on computers for security reasons, that there is no expectation of privacy. It's somewhat like the U.S. versus Scruci case. Richard Scruci, some of you may be familiar with this case. He was the owner of HealthSouth. There was a well-publicized... We're familiar with that gentleman. There was a well-publicized case that tried for months and months and he was actually acquitted. But in the course of that case, he objected to the government without a search warrant going into his private office. The only way you could get to his office was from a private elevator. And with the exception of two or three people, nobody could go into his office. The janitor had to go in there with a security guard. So he argued that the government had no right to go in there without a search warrant. Judge Karen Baldry, the district court judge, did a wonderful job of going through all of... most, if not all, of what you have raised today to conclude that he had no expectation of privacy. And the reason being, in that case, the lawyers for HealthSouth, who was cooperating with the government, gave... they consented to the search. In our situation, we're saying that the computer use policy combined with the police department's prohibition of personal information for security reasons on Jennifer Smith's computer, that was tantamount to consent. But that seems different to me, right? In Scroogey, the situation was that there was a government investigation and the company itself consented to a search of its computer. Here, we have an individual... First of all, there's no government investigation. It's not a criminal investigation. Consent, of course, is an absolute... you know, absolutely can dispense with and does dispense with the need for a search warrant. So that, to me, seems like a kind of distinguishable case. Here we have a situation where this is an employee, this is not a criminal search, it's not being conducted as a criminal search, and that we have all these other considerations which are not considerations in the context of the criminal investigation where there is consent. And I think that we have to... some kind of consideration of these other factors. I mean, I don't want to prolong it. I just want to make sure I give you a chance to address those factors. You know, even though it's in the context of retaliation, the courts... Well, no, the court in Ortega's and O'Connor said this, that you have to look at the operational realities of the workplace. And the operational realities of the workplace here was Jennifer Smith, as the administrative assistant, her office was subject to inspection at any time by her boss, who was the police chief, including her computer, because the information that was on her computer was information that was there for the benefit of the police chief. Can I ask you another question? Yes. Are you familiar with the Riley case from the Supreme Court involving the search of the cell phone and the question as to whether a search warrant was needed and how much of it... How much of it you could actually search with respect to what it was that you might have had probable cause to look for? And the court said, you can't search everything. You can only search those things that there's, you know, that there's a basis for searching and you have probable cause to search. And so let's just take that for a moment. I wonder how, if at all, that affects the analysis here where we have the situation of the trashed emails and the pictures that were on the computer but were on the computer only because the phone had to be backed up and was done with permission by the city. Right. With respect to the photos, the reason, the justification for searching that is the prohibition against personal items being owned, the police department's prohibition against personal items being owned there. With respect to the emails, remember Chief Palmer was dissatisfied with her work. After she started her second job, her work performance for him deteriorated dramatically to the point that in July of 2015, he started his internal investigation of why his work wasn't getting done. And the search for, on her, involving items of her, from her iPhone would include, for example, a calendar. It would include email communications because she was using, she was using her cell phone both for city work and for her secondary work for the employer which meant that her work wasn't getting done for the city. So all of that was designed to see why she wasn't getting her work done and how was she spending her time. Do you happen to know offhand the parts in the record that we can look to with respect to his belief that she wasn't getting her work done and that's why he started the investigation before she made the complaint? Yes, I can. His deposition transcript is 400 pages. I know that there's considerable because I just read it. I know there's considerable discussion in that deposition. I don't have the exact... That's okay, I understand. I guess, just to be clear, and it may be that the answer is in the deposition that he refers to some memo he wrote or something like that but is there anything that predates her complaint that is in the record not testimony about what he remembers about that time? Yes, two things. The Facebook postings and the time audit although he didn't receive the time audit until after she filed her internal complaint. It began on or around July 1 of 2015. That's both in his testimony. It's in the disciplinary action notice that it started around that date and it's also in Holly Kaufman's testimony. I agree. I remember seeing that. My question is a little bit more specific which is... No, it's okay, I wasn't clear. Which is that the reason that he started the investigation was his work was not getting done as opposed to that he just didn't like the idea of her working a second job. No, he actually authorized it. Now, remember he authorized it and she said, I promise I won't let it interfere with my work. I'll only work after hours. Two days after promising that she took a day off and worked at Oak Mountain Apotheater and she continued that. It accelerated in July and August and it was in conjunction with that that he asked for the time audit to try to find out what she was doing with her time. When he got the results of the time audit it didn't really answer the question what's she doing with her time? That's when he ordered the search of the computer to see by going through emails and those type of communications in her calendar he could find out what's going on here. So it was a continuation that started around July 1st of 2015 and continued out even after the internal complaint was filed and he eventually got to the bottom of it. She was working the second job and not his job. I mean she described it I mean that was her passion was the Oak Mountain job not the job with the mayor and I see my time is up. On behalf of the city we appreciate the opportunity to be here today. Thank you very much. Alright, Mr. Gurrier. We just want to give you all another thing you have to worry about while you're down there. No, that's fine, thank you. Your Honor, I'll sort of go in reverse order on my reply here. Chief Palmer began an investigation of Ms. Smith's work time in attendance because he believed that she was not at work with not filling out leaf slips and so that's what he ordered the audit to be an abuse of the time in attendance records and that audit was covered April through August and as a result of that audit Ms. Kaufman reported I can find no instance where she was absent without a leaf slip that you signed and no instance that she worked overtime without a leaf slip that you, or without permission from you. So found no abuse at all of time in attendance. He then claims that but my work was not getting done it's obviously she was not doing the job. Why look at all the overtime she was using in July. But then he admits in his deposition that of course that's when we're doing the budget everyone's got to work overtime. I approved all overtime because we were under the crunch to get the budget done. So there's no evidence anywhere in the record that she was not getting her work done and that he did an audit because of her work done. But that audit whatever we say about it was done we believe by the end of August. And this is one of the important facts we think the district court judge drew an inference in favor of the defendants rather than in terms of the plaintiff because that audit has calendar sheets that were printed out and then filled in by Ms. Kaufman. The March sheet and the later I believe August sheet they were printed out in September 3rd the day after she files an internal complaint. And that's the day that Mr. Palmer says I want you to expand your audit go back and see if there's anything more we can find on her. So that whatever was going on was motivated in part by that. And indeed in the appellee's brief the very I think last page they say once she filed her internal complaint he decided he had to get to the bottom of this and conduct his own investigation. That's at least an admission that her internal complaint was a but for a reason of his expanded investigation. Quickly on the factors that I think Judge Rosenblum you identified for looking at the search I think you're absolutely right you've got to look at all those things there was no evidence they did any frequency of searches no history of this being done and so you've got to look at that entire circumstances. And so I think when you look at the controlling Fourth Amendment case law Title VII case law it's clear the District Court erred in resolving this case on summary judgment and the case should be remanded for trial. Thank you very much. Thank you counsel we'll be in recess